# UNITED STATES DISTRICT COURT
## SOUTHERN DISTICT OF OHIO
### WESTERN DIVISION

CAROLYN TURNBOW-AVERY,                        Case No. 1:23-cv-571
    Plaintiff,                               Litkovitz, M.J.

    vs.

DOUGLAS TULING, ACTING
POSTMASTER GENERAL,                           **ORDER**
    Defendant.

Pro se plaintiff Carolyn Turnbow-Avery initiated this action on September 8, 2023 and

alleges race, color, and sex discrimination[1]; retaliation; and harassment during her employment

with the United States Postal Service (USPS) in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, as amended (Title VII).  This matter is before the Court on the parties'

cross-motions for summary judgment and related memoranda.  (Docs. 120, 121, 125, 128, 132,

139).  Defendant also filed a motion to strike several of plaintiff's filings, to which plaintiff

responded.  (Docs. 127, 133).

## I.  Motion to strike

Defendant argues that plaintiff's motion for summary judgment and attachments (Docs.

121, 121-1, 121-2, and 121-3) and response in opposition to defendant's motion for summary

judgment (Doc. 125) attempt to circumvent the Court's Local Rules (S.D. Ohio Civ. R. 5.1[2]), the

undersigned's Standing Order (§ I.G[3]), and the undersigned's previous Order in this case

denying leave to file a dispositive motion in excess of 20 pages (Doc. 109).  The Court agrees

that the identified filings do not follow the Court's page-spacing and page-limitation rules, and

---

[1] Defendant's motion for summary judgment references age discrimination (Doc 120 at PAGEID 3361) but plaintiff forfeits any such claim—stating she "did not file a claim in this lawsuit for age."  (Doc. 125 at PAGEID 3750).
[2] This rule requires all motions and briefs to be "double-spaced, except for block-quoted material."
[3] This subsection reads: "**Briefs and/or memoranda in support of or in opposition to any motion in this court shall not exceed twenty pages unless a party first obtains leave of court.**"

plaintiff's response offers no justification other than her "good faith" belief that they were compliant.  (Doc. 133 at PAGEID 3874).  There is no self-evident reason why the excessive length of these filings is otherwise justified.  While the Court hesitates to implicitly condone plaintiff's formatting, it is nevertheless mindful of her pro se status and has an overarching preference for reaching the merits of her claims.  *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) (federal courts have a strong preference for deciding cases on their merits).  Defendant has already carefully reviewed and responded to these filings, and the Court is prepared to address the merits of the motions.  Defendant's motion to strike (Doc. 127) is therefore **DENIED**.

## II.     Plaintiff's deposition

The Court next addresses plaintiff's allegation that she has not reviewed her deposition transcript.  (*See* Doc. 125 at PAGEID 3753; Doc. 132 at PAGEID 3860).  Defendant responded with his counsel's declaration concerning plaintiff's access to her deposition transcript.  (Doc. 137).

The Federal Rules of Civil Procedure state the following regarding copies of a deposition transcript or recording: "When paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent."  Fed. R. Civ. P. 30(f)(3).  *Cf. Santini v. Farris*, No. 2:21-13045, 2023 WL 8874236, at *3 (E.D. Mich. Oct. 12, 2023) ("[A]bsent from Rule 30 is any language authorizing courts to order one party to purchase transcript copies for another party.  So not only does Rule 30 not entitle parties to copies of deposition transcripts, but it does not even give courts discretion to shift the costs of purchasing a copy from one party to another.").  Defendant's counsel states that plaintiff purchased a video copy of her deposition

from the videographer. (Doc. 137 at PAGEID 3886, ¶ 6). (*See also* Doc. 124 (plaintiff's notice of filing a flash drive containing a video of her deposition)).

Defendant filed plaintiff's deposition transcript in connection with his motion for summary judgment. (Doc. 118-1). *See* Fed. R. Civ. P. 5(d)(1)(A) (depositions "must not be filed *until they are used in the proceeding*") (emphasis added). In her declaration, defendant's counsel explains that just after this filing, she sent plaintiff a copy of her deposition electronically using the same means the parties had used to exchange large electronic files throughout the case. (Doc. 137 at PAGEID 3886-88; PAGEID 3894-3906, 3910-11 (examples of past practice using USAfx)). Defendant's counsel also describes various steps she took between April 14, 2025 and May 13, 2025 to assist plaintiff in accessing the deposition transcript electronically. (*Id.*).

Where service of a document is required under Rule 5, service must generally be made according to subsection (b)(2) (as relevant here, "handing it to the person" (Fed. R. Civ. P. 5(b)(2)(A)), "leaving it . . . at the person's dwelling or usual place of abode" (Fed. R. Civ. P. 5(b)(2)(B)(ii)), or "mailing it to the person's last known address" (Fed. R. Civ. P. 5(b)(2)(C)) unless the person is a registered user of the Court's electronic filing system or the person has consented in writing otherwise (Fed. R. Civ. P. 5(b)(2)(E), (F))). In *J.H. By Harris v. Cruz*, the court discussed when an exception to strict compliance with Rule 5(b) may be appropriate:

> Within the Sixth Circuit, at least once district court has noted that, "[w]hile 'actual notice' when service is not accomplished in accordance with the requirements of Rule 5(b) . . . is not usually found to be a substitute for service under the requirements of Rule 5(b), in certain circumstances, proper service by means outside of the strict terms of Rule 5(b) has been upheld where 'good cause' is shown." *Westlake Reed Leskosky v. Hudson Holdings, LLC*, No. 1:20-cv-1751, 2022 WL 1749524, at *9 (N.D. Ohio May 31, 2022) (citing *S. Cal Darts Ass'n v. Zaffina*, 762 F.3d 921, 928 (9th Cir. 2014)). One circumstance that will satisfy the "good cause" standard, for example, is when "a party has previously accepted service by a method outside of Rule 5(b) without objection." *Id.* (citing *Salley v.*

*Bd. of Governors*, 136 F.R.D. 417, 420-21 (M.D.N.C. 1991)); *see also Van v. Language Line, LLC*, No. 14-cv-03791, 2016 WL 5339805, at *6 (N.D. Cal. Sept. 23, 2016) (finding service "in accordance with the parties' usual practice" sufficient despite its deviance from Rule 5(b)), *aff'd sub nom. Van v. Language Line Servs., Inc.*, 733 F. App'x 349 (9th Cir. 2018).

*J.H. By Harris v. Cruz*, No. 3:14-cv-02356, 2022 WL 17861353, at *3 (M.D. Tenn. Dec. 22, 2022).

Defendant's counsel states that plaintiff never objected to or otherwise expressed concern over this method of exchanging large exhibits. (Doc. 137 at PAGEID 3887, ¶ 13). In addition, plaintiff had purchased a video copy of her deposition, affirmatively accepted an electronic invitation to reactivate her USAfx account to view defendant's motion for summary judgment exhibits electronically (*id.* at ¶¶ 8-9; Doc. 137-6 at PAGEID 3906), and does not identify any particular prejudice she suffered in connection with defendant's service method. Under these circumstances, the Court finds that the service of defendant's deposition transcript was sufficient.

### III. Background[4]

Plaintiff worked as a Mail Handler at the Springdale Annex of the USPS until her recent retirement. Plaintiff's daughter, Mercedes, worked in the same position and location at all relevant times. Both are African American women who describe themselves as dark-skinned. The following individuals were in supervisory/management roles when the events giving rise to this lawsuit occurred:

**Jennifer Goddard** (Caucasian female): Level 17 Supervisor

**Saguna Michelle Brown** (African-American/Indian female): Level 17 Supervisor

---

[4] The following is a summary of relevant undisputed facts unless otherwise noted. The Court notes that the "Response to Proposed Undisputed Fact," "Plaintiff Additional Facts" and "Declaration in Response to Defendant Motion for Summary Judgment" sections of plaintiff's response to defendant's motion for summary judgment (Doc. 125 at PAGEID 3750-800)) are verified under 28 U.S.C. § 1746. Plaintiff's verified filings have the same force and effect as affidavits for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(c). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**Rameka Hollyfield** (African-American female): Acting Supervisor

**Mark White** (Caucasian male): Level 17 Learning Development Specialist

**Bakari Hicks** (African-American male): Level 22 Manager of Distribution Operations

**Nick Stephens** (African-American male): Level 22 Manager of Distribution Operations

**Maureen Gerst-Stewart**: Plant Manager (race/sex not specified)

**Jean Lovejoy** (African-American female): District Manager

As a general matter, plaintiff alleges that she was singled out and subjected to heightened scrutiny for on-duty cell phone use. Plaintiff also alleges that she was "follow[ed]" and "watch[ed]" as it related to her lunch and break times. (Doc. 118-1 at PAGEID 2319, Pl.'s Dep. 123:14-16). Plaintiff's lawsuit is primarily focused on Supervisor Goddard, who allegedly gave preferential treatment to her son, Barry Goddard (also a USPS Mail Handler at the Springdale Annex) and to male USPS employees. (Pl.'s Dep., Doc. 118-1 at PAGEID 2254-60, 2352-57). Plaintiff's belief about the preferential treatment of male USPS employees is largely based on "rumors" of sexual relationships between male employees and female supervisors. (*Id.* at PAGEID 2259-61, 2294-95, 2309-29, 2348-49). Plaintiff also testified that she believed Supervisors Goddard and Hollyfield, in particular, preferred men and did not like black women. (*Id.* at PAGEID 2296-97).

According to plaintiff, the alleged "disparate treatment by Supervisor Goddard" occurred from October 11 to November 15, 2021. (Doc. 125 at PAGEID 3743; *see also* Doc. 118-14 at PAGEID 2848 (plaintiff's response to an interrogatory stating that the first instance of harassment was October 11, 2021)). Plaintiff testified about the October 11, 2021 incident:

> [Supervisor Goddard] walk[ed] up to me and sa[id] Ms. Carolyn why you have your
> phone in you[r] hand. I then state[d] because your son has his phone in his hand.
> Jennifer then state[d] when I see him I tell him to put it away. I then stated

5

[Supervisor Hollyfield] doesn't question -- oh, [Supervisor Hollyfield] don't I guess because he's your son and then [Supervisor Goddard] walks off.

(Doc. 118-1 at PAGEID 2280, Pl.'s Dep. 84:4-10).  Plaintiff alleges that she verbally reported Supervisor Goddard's alleged harassment to Managers Hicks and Stephens sometime in early October 2021.  (*See* Doc. 125 at PAGEID 3756-58).  Based on the evidence before the Court, this report was between October 11, 2021 (the first instance of harassment) and October 29, 2021.  (*See* Pl.'s Interrog. Resp., Doc. 118-14 at PAGEID 2848; Pl.'s Reply, Doc. 132 at PAGEID 3861 ("Plaintiff verbally complained of harassment by Jennifer Goddard to Hicks and Stephens prior to . . .October 29, 2021. . . .")).

Plaintiff testified that on October 29, 2021, she confronted Supervisor Goddard about moving Mercedes to a different machine.  (Doc. 118-1 at PAGEID 2281; Doc. 118-10 at PAGEID 2693-94, Pl.'s Dep. Ex. I (April 2022[5] statement prepared by plaintiff in connection with her EEO affidavit)).  Plaintiff and Supervisor Goddard then walked into an office, where Supervisor Brown joined.  (Doc. 118-1 at PAGEID 2286; Doc. 118-10 at PAGEID 2694).  Supervisor Goddard allegedly said that "she can do what she wa[nts]."  (*Id.*).  Plaintiff "storm[ed] out [of] the room saying [she] will file a[n] EEO and [Supervisor Goddard] stated file a[n] EEO."  (*Id.*).

On October 31, 2021, plaintiff sent an email to District Manager Lovejoy with the subject line, "Abuse Of Power At Springdale Annex," which included no specifics regarding conduct or personnel involved.  (Pl. Dep. Ex. A, Doc. 118-2 at PAGEID 2498).  On November 4, 2021, plaintiff sent another email to District Manager Lovejoy with the same subject line as the October 31, 2021 email and this time referenced a "Hostile Work Environment," "supervisor

---

[5] (*See* Doc. 118-1 at PAGEID 2278-79 ("Q. So you think you typed it up when you prepared your affidavit [around April 2022]?  . . .  "A. [Y]eah, I did. . . .")).

Jennifer['s]" preferential treatment of her son and employees with which she had a personal relationship, and "supervisor Jennifer['s]" "problem" with African American women as opposed to African American men. (*Id.* at PAGEID 2499).

On November 9, 2021, Mercedes was allegedly called in by a manager to discuss an overly long break. Several hours after that discussion, plaintiff sent a third email to District Manager Lovejoy and Louis DeJoy:

> I Have Reported This Problem And Yet It Continues To Get W[orse] Because Of Me Complaining To Upper Management, Supervisors Jennifer Goddard Is Harassing my daughter and Continue to cause a Hostile Work Environment. I Will Decide What Next M[ethod] I Need To Take To Stop This Retaliation/Harassment Before It Gets Out Of Hand/Control Because Management Continue To Allow This Woman To Abuse Her Power And Nothing Is Done. She Needs To Be Moved Out Of This Facility ASAP. Supervisors Jennifer Continue To Not Assign Jobs By Seniority Which She Allowing Junior Employees To Work W[h]ere Senior Employees Wishes To Work Then Issue A Warning To My Daughter For The Same Shit She And other Supervisors Allow Other Employees/ Friends To Do. THIS NEEDS TO STOP IMMEDIATELY.

(Doc. 118-2 at PAGEID 2502-03). Plaintiff testified that she received no response from District Manager Lovejoy or Louis DeJoy (other than an automated "out-of-office" reply) to any of these emails and had no indication that their contents had been shared with other USPS employees. (Doc. 118-1 at PAGEID 2267, 2269, 2272-73).

In the early morning of November 10, 2021, Supervisor Hollyfield conducted a pre-disciplinary interview with plaintiff about a longer-than-allowed break (34 minutes when the maximum was 15 minutes). (*See* Pl.'s Dep. Ex. K, Doc. 118-12 at PAGEID 2765). Plaintiff responded to three of the interview questions: "I rebuke you Satan in the same of Jesus." (*Id.*). Later that morning, plaintiff sent an email to William Jones, who forwarded it to Kelly Patterson,[6] alleging that her pre-disciplinary interview was in retaliation for her prior reports of

---

[6] Plaintiff testified she sent the email to Mr. Jones because he had been referenced in District Manager Lovejoy's "out-of-office" message, and Mr. Jones forwarded it to Ms. Patterson because the latter was in the human resources

misconduct by Supervisors Goddard and Hollyfield. (Doc. 118-2 at PAGEID 2504-05). Plaintiff testified that she received no response from Mr. Jones or Ms. Patterson and had no other indication that her emails been shared with Supervisors at the Springdale Annex. (Doc. 118-1 at PAGEID 2272). Plaintiff initiated an EEO action on November 10, 2021. (Doc. 118-2 at PAGEID 2508-09).

On November 15, 2021, plaintiff overheard Supervisor Goddard talking to Mercedes about on-duty phone use. Mercedes was explaining that "Tracy and Paula[7] and the guys" were also on their phones but Supervisor Goddard did nothing about it. (Doc. 118-1 at PAGEID 2333, Pl.'s Dep. 137:9-11; Doc. 118-10 at PAGEID 2682). Plaintiff then intervened, saying that "guys on the SWYB sit down all the time on their phone and you walk right by them," and Supervisor Goddard responded that she did not supervise those employees. (Doc. 118-1 at PAGEID 2333, Pl.'s Dep. 137:11-20; Doc. 118-10 at PAGEID 2682).

At this point, accounts diverge. According to plaintiff, she simply pointed to another employee that was on his phone to bring this to Supervisor Goddard's attention. (Doc. 118-1 at PAGEID 2337; Doc. 118-10 at PAGEID 2682). Plaintiff testified, "My arm – my finger might have brushed [Supervisor Goddard's] shoulder. . . ." (Doc. 118-1 at PAGEID 2337, Pl.'s Dep. 141:17-18).[8] Mercedes' contemporaneous written statement is consistent with plaintiff's account. (Doc. 118-10 at PAGEID 2615). Other contemporaneous written statements by Supervisor Goddard and USPS employee Allana Robinson reflect that plaintiff grabbed Supervisor Goddard. (Doc. 118-10 at PAGEID 2617 ("[Plaintiff] then grabbed both of my arms

---

department. (Doc. 118-1 at PAGEID 2270-72).
[7] Plaintiff testified that Tracy and Paula were dark-skinned African American women. (Doc. 118-1 at PAGEID 2332).
[8] In the "Pre-Disciplinary Investigative Interview" form dated several weeks after the incident, plaintiff wrote that she "d[idn't] recall" and was "not sure" if she made contact with Supervisor Goddard. (Pl.'s Dep. Ex. K, Doc. 118-12 at PAGEID 2744).

to try and move me."); PAGEID 2619 ("[Plaintiff] grabbed [Supervisor Goddard] with both arms to try and turn her around to show her the maintenance guy. . . .")). Manager Stephens then arrived, listened to both sides, and took statements.

On November 16, 2021, plaintiff was put on "emergency placement" (i.e., emergency unpaid leave) for improper conduct. (Doc. 118-12 at PAGEID 2756 (USPS "Emergency Placement In Off-Duty Status")). Based on the evidence in the record, the decisionmaker was either Manager Hicks, Learning Development Specialist Mark White, or Supervisor Brown.[9] On December 15, 2021, Supervisor Brown[10] sent plaintiff a "notice of removal" for improper conduct, citing witness statements reflecting that plaintiff had put her hands on a supervisor in violation of a policy of zero tolerance for workplace violence. (Id. at PAGEID 2738-42 (USPS "Notice Of Removal" and "Request For Discipline")[11]; Doc. 119-3 at PAGEID 3271, Brown EEO Aff. (Supervisor Brown states that she gave plaintiff an investigative interview because of

---

[9] The official form includes Manager Hicks' unsigned signature line. (Doc. 118-12 at PAGEID 2756). In his EEO affidavit, Manager Hicks stated that Mr. White made the decision for the emergency placement without his concurrence. (Doc. 119-4 at PAGEID 3290). In his deposition, Manager Hicks explained that he agreed with Mr. White's decision on plaintiff's emergency placement and gave Mr. White permission to sign paperwork to that effect on his behalf. (Doc. 119-1 at PAGEID 3228, 3230-32). Manager Hicks testified Supervisor Brown had told him that plaintiff made contact with Supervisor Goddard during this incident. (Id. at PAGEID 3228, 3243). In Mark White's EEO affidavit, he stated:

> I was told by another Supervisor the complainant was placed on Emergency Placement on November 15, 2021. On November 16, 2021, I was leaving the facility and the complainant was entering the facility. I stopped her and took her to the Supervisor's office. I contacted the Manager, Bakari Hicks, and he told me she was not to work. He sent me the Emergency Placement letter which I issued to the complainant.

(Doc. 119-5 at PAGEID 3305).

[10] There is conflicting evidence as to whether Manager Hicks was a concurring official on the removal decision. The contemporaneous USPS "Request for Discipline" form reflects Manager Hicks as the concurring official. (Doc. 118-12 at PAGEID 2742). In Supervisor Brown's EEO Affidavit, prepared approximately six months later, she stated there was no concurring official. (Doc. 119-3 at PAGEID 3277).

[11] The Notice of Removal cites violations of USPS's Employee and Labor Relations Manual sections "Behavior and Personal Habits," "Violent and/or Threatening Behavior," and "Employees"; its "Policy on Workplace Harassment," and its "Zero Tolerance Policy." (See Doc. 118-12 at PAGEID 2738-40).

9

"[t]he statements [she] received stating [plaintiff] put her hands on a supervisor"); Doc. 119-10 at PAGEID 3358 ("Zero Tolerance Policy")).

Plaintiff grieved her removal through her union, which gathered written statements about the November 15, 2021 incident. Those included a statement by Ferdinand Manzon, a maintenance employee, and "Carla B." (last name not clearly legible), which suggest that the events of November 15, 2021 were consistent with plaintiff's telling and that Allana Robinson was pressured by Supervisor Goddard to manipulate her statement as a quid pro quo for a promotion. (Doc. 118-10 at PAGEID 2614, 2620-22). (*See also* Doc. 118-1 at PAGEID 2416, Pl.'s Dep. 220:12-15 (plaintiff testified that Ms. Robinson "told [Carla B.] [Supervisor Goddard] came and asked for a second statement and then management offered her a supervisor position right after her statement")).[12] USPS documents show a promotion effective several days after the incident (the document in the record is redacted, but plaintiff asserts that Ms. Robinson was the recipient). (*See* Doc. 132 at PAGEID 3863, referring to Doc. 89-1 at PAGEID 1267). Plaintiff's union reached a settlement resulting in a reduction from removal to suspension and reinstatement as of July 2, 2022 with full back pay.

## IV. Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed

---

[12] Defendant argues that Mr. Manzon and Carla B.'s statements are inadmissible hearsay or hearsay within hearsay. (*See* Doc. 120 at PAGEID 3378 n.11; Doc. 128 at PAGEID 3835).

material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v.*

*Montgomery Cnty. Jail Med. Staff Pers*., 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings)). A party's status as a pro se litigant, however, does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

## V.    Analysis

The Court first notes the parties' respective burdens on their cross-motions for summary judgment. Where a party like plaintiff moves for summary judgment on her *own* claims, her:

> initial burden is not merely to identify holes in the non-moving party's case.

12

> Instead, the moving party "must lay out the elements of the claim, cite the facts which [she] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) ("In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." (internal quotation marks omitted)); Wright & Miller, 10A Fed. Prac. & Proc. § 2727.1 (4th ed.).

*United States v. Feldman*, 439 F. Supp. 3d 946, 951 (E.D. Mich. 2020).  By contrast, without the burden of persuasion, defendant need only identify the insufficiency of plaintiff's evidence supporting her case to succeed on his motion.

The Court therefore begins with defendant's motion for summary judgment.

1. Discrimination claims

Where a plaintiff seeks to prove her Title VII claim through circumstantial evidence,[13] the claim is analyzed under the *McDonnell Douglas/Burdine* burden-shifting framework.[14]  *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).  Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Once the plaintiff proves a prima facie case of discrimination, the burden shifts to the defendant to produce some legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the reason offered by the defendant is a mere pretext for unlawful discrimination.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802, 804).  Even with this burden-shifting framework, "[t]he ultimate burden of persuasion remains at

---

[13] The Court does not find there is direct evidence of discrimination or retaliation in this case, and plaintiff does not clearly take that position.

[14] The Supreme Court established this framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and refined it in *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981).

all times with the plaintiff." *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (citing *Burdine*, 450 U.S. at 253).

To establish a prima facie case of race, sex, or color discrimination under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced by or treated less favorably than a similarly-situated individual outside the protected class. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 654-55 (6th Cir. 2015) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012) and *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010)). Defendant argues that plaintiff cannot satisfy elements two and four of her prima facie case.

The second element of a prima facie case requires that plaintiff be subjected to an adverse employment action. An adverse employment action is a "materially adverse change in the terms and conditions of [the plaintiff's] employment." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). A "bruised ego," a "mere inconvenience[,] or an alteration of job responsibilities" is not enough to constitute an adverse employment action. *Id.* (citing *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)) (quoting *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). "[N]ot every act affecting an individual's employment constitutes a materially adverse change." *Stewart v. Esper*, 815 F. App'x 8, 17 (6th Cir. 2020) (citing *McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005)).

Defendant first argues that only plaintiff's emergency placement and removal qualify as adverse actions for purposes of plaintiff's race, color, and sex discrimination claims; and the

14

November 10, 2021 pre-disciplinary investigative interview and alleged over-monitoring and verbal counseling do not. Plaintiff does not clearly challenge defendant's position,[15] and the Court agrees that only plaintiff's emergency placement and removal from employment were adverse for purposes of plaintiff's discrimination claims. *See McDaniel v. Potter*, No. 1:06-cv-0803, 2007 WL 3165807, at *6 (N.D. Ohio Oct. 26, 2007) ("The Court finds the USPS's action involving a pre-disciplinary interview . . . was not a materially adverse change in the terms or conditions of his employment and, accordingly, did not rise to the level of an adverse employment action."); *Weigold v. ABC Appliance Co.*, 105 F. App'x 702, 708 (6th Cir. 2004) ("A formal reprimand may constitute adverse employment action but . . . a verbal reprimand does not."); *Springer v. Brennan*, No. 17-11413, 2018 WL 4637344, at *8 (E.D. Mich. Sept. 27, 2018) ("Receiving a verbal reprimand . . . with no accompanying disciplinary write-up or any other consequences such as loss of pay, is not an adverse action for purposes of a gender discrimination claim under Title VII."); *Freeman v. Marshall Cnty. Fiscal Ct.*, No. 5:22-cv-57, 2024 WL 4151174, at *14 (W.D. Ky. Sept. 11, 2024) (quoting *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 216-17 (E.D. N.Y. 2014)) ("Excessive scrutiny, monitoring, and criticisms of [plaintiff's] job performance [are] not adverse employment actions absent evidence of materially adverse impact."); *Conner v. Bd. of Trs. for Univ. of Ill.*, No. 19-cv-846, 2019 WL 5179625, at *9 (N.D. Ill. Oct. 15, 2019) ("Excessive scrutiny, while it may be irksome, is not a 'significant' change in employment status or working conditions."). The Court therefore

---

[15] Plaintiff states in the verified portion of her response that she "did not list the monitoring as an adverse action" and "never claim[ed] that the pre-disciplinary was an adverse employment action. . . ." (Doc. 125 at PAGEID 3769, 3772). She also states in her own motion for summary judgment that she "suffered an adverse employment action, when she was sen[t] home, placed on Emergency Placement and Remove[d]/Fired from her employment." (Doc. 121-1 at PAGEID 3398).

considers only plaintiff's emergency placement and removal as adverse actions for purposes of her sex, race, and color discrimination claims.

The Court next considers element four. "A plaintiff seeking to show that [s]he 'was treated less favorably than a similarly-situated individual . . . must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself.'" *Davis v. Ineos ABS (USA) Corp.*, No. 09-773, 2011 WL 1114409, at *3 (S.D. Ohio Mar. 24, 2011) (quoting *Chamberlain v. Consol. Learning Centers, Inc.*, No. 1:09-cv-751, 2010 WL 5677050, at *6 (S.D. Ohio Dec. 2, 2010) (report and recommendation), *adopted*, 2011 WL 332547 (S.D. Ohio Jan. 31, 2011)). To be similarly situated in a disciplinary context, the individuals must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

The only individual plaintiff *has* identified as a comparator for these adverse actions is Barry Goddard—Supervisor Goddard's son. It is plaintiff's position that Barry Goddard also made contact with another employee (threw a box that hit and injured another employee while on the job in early 2022), yet the incident was not reported and he was not disciplined. (*See* Doc. 125 at PAGEID 3771; Doc. 118-1 at PAGEID 2349-54; Doc. 118-5 at PAGEID 2543-44 (plaintiff's EEO statement of facts)). By contrast, plaintiff argues that Supervisor Goddard "was quick to report" plaintiff's physical contact on November 15, 2021, and this demonstrates disparate treatment. (Doc. 125 at PAGEID 3771).

16

Defendant argues that plaintiff has failed to identify a similarly-situated comparator for purposes of her emergency placement and removal. Defendant argues that plaintiff's comparison to Barry Goddard is inapt because his preferential treatment was, if anything, related to unactionable nepotism and not illegal discrimination.[16] *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir. 1996) ("[C]harges of nepotism, even if proven, do not constitute evidence of impermissible discrimination under Title VII. . . .").

In addition, defendant argues that the evidence before the Court establishes that plaintiff and Barry Goddard were not similarly situated. As an initial matter, defendant notes that the evidence providing the details of the allegedly comparable incident is hearsay.[17] (*See* Doc. 118-1 at PAGEID 2351-52 (plaintiff explains that she did not witness the incident and her knowledge of it is based on "what Paula and Leslie" told her)). But assuming the incident involving Barry Goddard occurred as described in plaintiff's deposition, defendant argues it is nevertheless distinguishable in two major ways: Barry Goddard made contact with another employee as opposed to a supervisor, and the contact was not intentional. Plaintiff testified:

> Q. . . . [Y]ou state that Barry Goddard threw a box and injured *a co-worker* and did not get disciplined?
>
> A. Yes that's correct.
>
> Q. And you're referring to an incident that allegedly occurred in February of 2022; is that right?
>
> A. That's the date I was given by a co-worker that I asked the actual individual that got hit and she said it was January.
>
> Q. Okay. So what's the co-worker that told you about this? Who is it?

---

[16] Defendant also argues that plaintiff has failed to identify proper comparators related to the other alleged adverse actions. But because the Court has concluded that only plaintiff's emergency placement and removal were adverse actions for purposes of her discrimination claims, it is unnecessary to address this argument.

[17] Hearsay is a "statement that . . . the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

A. Paula Taul.

Q. And who was the young lady who was allegedly hit?

A. Leslie.  I don't know her last name.  She told me it was January.

. . . .

Q. So you were not in the facility on that date to witness the alleged incident?

A. Correct.

Q. What is your understanding of what happened from -- based on what Paula and Leslie told you?

A. Paula didn't give me -- she didn't go into details because she didn't know much of what she heard of rumors and when I got back I actually asked Leslie and she said he threw a box.  It hit her in the face and broke her glasses.  She went to tell Jennifer Goddard and Jennifer rushed her out of the building to go home to put ice on it.  And did not discipline Barry or send him home.

. . . .

Q. Do you have any reason to believe that Barry Goddard intentionally hit Leslie with the box?

A. *I don't think he [hit her] intentionally*.

Q. What specific policy do you believe Mr. Goddard violated if any with respect to the box incident?

A. Throwing, you're not supposed to be throwing items and just in general he injured an employee so he should have gotten disciplined.

Q. Okay.  Can you point to a specific policy?

A. No I cannot.

(*See* Doc. 118-1 at PAGEID 2349-52, Pl.'s Dep. 153:20-156:17 (emphasis added)).

In her response, plaintiff does not dispute that the person allegedly injured by Barry Goddard was a co-worker as opposed to a supervisor or that there was any reason to believe Barry Goddard's contact with that co-worker was intentional.  Instead, plaintiff takes the position

that both incidents should have been reported but Supervisor Goddard only reported plaintiff's conduct.  (*See* Doc. 125 at PAGEID 3771).  Plaintiff relies on the deposition testimony of Manager Hicks (*see id.*), who testified that he was "made aware of the situation" (i.e., the early 2022 incident of Barry Goddard throwing a box) but did not recall what, if any, disciplinary actions were taken as a result.  (Doc. 45 at PAGEID 369-70, Hicks Dep. 37:3-38:2).

To survive summary judgment on the fourth element of her prima facie case, plaintiff is required to proffer some evidence that she and Barry Goddard dealt with the same supervisor and engaged in the same conduct without differentiating or mitigating circumstances.  *See Ercegovich*, 154 F.3d at 352.  The Court has not been directed to competent summary judgment evidence demonstrating that Supervisor Goddard was also the on-duty supervisor when the incident involving Barry Goddard occurred.  Moreover, plaintiff's emergency placement and removal were based on her being "in an altercation with a supervisor."  (Doc. 118-12 at PAGEID 2756 (emergency placement notice); Doc. 118-12 at PAGEID 2738 (removal notice citing plaintiff's "heated conversation" with Supervisor Goddard, during which plaintiff "placed [her] hands" on Supervisor Goddard.)).  Even assuming plaintiff did not make physical contact with Supervisor Goddard, plaintiff does not appear to dispute that they were in an altercation.  By contrast, there is no evidence that the incident involving Barry Goddard was the result of a disagreement, altercation, or any intentional behavior; indeed, there is no competent, non-hearsay evidence concerning the details of the incident involving Barry Goddard at all.

The evidence before the Court fails to establish that plaintiff and Barry Goddard were similarly situated for purposes of her discrimination claims.  While the similarly-situated inquiry "should not be exceedingly narrow[,]" *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014), the fact that plaintiff's discipline was the result of an altercation with a

supervisor renders Barry Goddard an unsuitable comparator. *See Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 483-84 (6th Cir. 2008) (summary judgment granted based on the "marked difference" between a comparator that assaulted a co-worker during an argument and the plaintiff's physical interference with a supervisor attempting to settle an argument between her subordinates).

Plaintiff has not raised a genuine issue of material fact on the prima facie elements of her discrimination claims. As such, it is not necessary to engage in the remainder of the *McDonnell Douglas/Burdine* analysis. Defendant's motion for summary judgment on plaintiff's discrimination claims is granted, and plaintiff's motion for summary judgment is denied.

2. Retaliation claims

Retaliation claims under Title VII based on indirect evidence also use the *McDonnell Douglas/Burdine* framework. *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). For the prima facie case under that framework, plaintiff has the initial burden to show that (1) she engaged in protected activity; (2) her exercise of that activity was known by defendant; (3) defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action. *Id.*

For the second element, plaintiff must show the decisionmaker knew of her protected conduct. *Mulhall v. Ashcroft*, 287 F.3d 543, 552-53 (6th Cir. 2002). It is not enough to show "general corporate knowledge"; instead, there must be either direct or circumstantial evidence that the *decisionmaker* actually knew of the prior protected activity. *Id. See also Evans v. Pro. Transp., Inc.*, 614 F. App'x 297, 300-01 (6th Cir. 2015) (Fair Labor Standards Act retaliation

claim)[18] ("plaintiffs cannot establish the second element of the prima facie case of retaliation merely by showing that PTI had 'general corporate knowledge' of [prior protected activity]").

For the third element, plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569-70 (6th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This element "is less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim." *Id.* at 570 (quoting *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775-76 (6th Cir. 2018)).

For the fourth element, "[a] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Robinson v. MGM Grand Detroit, LLC*, 821 F. App'x 522, 528 (6th Cir. 2020) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). This element is more burdensome than the "lessened causation standard" applicable to Title VII discrimination claims. *Nassar*, 570 U.S. at 360. Nevertheless, it is a "relatively light burden" to demonstrate "causation at the prima facie stage." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 350 (6th Cir. 2021).

Defendant argues that plaintiff has not made out a prima facie case for retaliation. In particular, defendant argues that the temporal proximity between plaintiff's report of harassment to Managers Hicks and Stephens between October 11 and 29, 2021 and her emergency placement and removal on November 16 and December 15, 2021, respectively—even if

---

[18] *Equal Emp. Opportunity Comm'n v. Se. Telecom, Inc.*, 780 F. Supp. 2d 667, 685 (M.D. Tenn. 2011) (citing cases and noting "it appears that retaliation claims under the FLSA are analyzed identically to retaliation claims under Title VII.").

sufficient to show causal connection—is undercut by plaintiff's intervening violation of USPS's zero tolerance for workplace violence policy.[19]

Defendant further argues that even if plaintiff has made out a prima facie case for retaliation based on her emergency placement and removal, USPS's zero-tolerance policy for workplace violence was a legitimate business reason for those actions. Defendant argues that plaintiff cannot show that that legitimate business reason has no basis in fact or that unlawful retaliation actually motivated the emergency placement and retaliation.

The evidence before the Court points to three potential decisionmakers with respect to plaintiff's removal and emergency placement. The Court considers plaintiff's retaliation claim with respect to each in turn.

---

[19] As with her discrimination claims, plaintiff does not clearly take the position that her pre-disciplinary interview with Supervisor Hollyfield or alleged over-monitoring and verbal counseling by Supervisor Goddard were materially adverse actions for purposes of her retaliation claims. *See supra* p. 15 & n.14. Plaintiff's own motion for summary judgment does not clearly identify these as materially adverse actions (*see* Doc. 121), and defendant's response thereto and plaintiff's reply address only plaintiff's removal and emergency placement. (*See* Doc. 128 at PAGEID 3845-48 and Doc. 132 at PAGEID 3868-69, respectively; *but see* Doc. 125 at PAGEID 3775 (in her response to defendant's motion for summary judgment, plaintiff states that her pre-disciplinary interview "could be adverse action" in the retaliation context)). Regardless, the evidence in the record does not show that the pre-disciplinary interview, over-monitoring, or verbal counseling here were materially adverse actions as understood in the retaliation context. *See Sutton v. Ohio Dep't of Rehab. & Corr.*, No. 3:21-cv-962, 2023 WL 4564385, at *7 (N.D. Ohio July 17, 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)) (holding that "petty slights or minor annoyances that often take place at work and that all employees experience" are not actionable and that an investigation or reprimand without additional consequences is not materially adverse action); *Finley v. City of Trotwood*, 503 F. App'x 449, 454 (6th Cir. 2012) (citing *Taylor v. H.B. Fuller Co.*, No. 06-cv-854, 2008 WL 4647690, at *8-9 (S.D. Ohio Oct. 20, 2008) (verbal warning insufficient to show materially adverse employment action)). There is also no competent evidence that defendant "selective[ly] enforce[d]" policies against plaintiff. *Sutton*, 2023 WL 4564385, at *9 (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014)). Despite her various statements otherwise, plaintiff admits throughout her deposition that she did not actually know whether her co-workers were disciplined for overly long breaks or on-duty cell phone use or not. (*See* Doc. 118-1 at PAGEID 2308-09, 2319-20, 2323, 2326-28, 2340-45, 2348, and 2357-58). The Court cannot credit her self-serving assertions regarding comparative discipline without adequate evidentiary support for that comparison (i.e., competent summary judgment evidence beyond plaintiff's mere belief). *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 943 (6th Cir. 2011) ("[T]he [summary judgment] standard . . . does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court, even when such assertions are completely unsupported by the record."); *Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 573 (6th Cir. 2018) ("[U]nsubstantiated, self-serving assertions will not preclude an adequately supported motion for summary judgment from being granted.").

There is no dispute that Supervisor Brown was a decisionmaker with respect to plaintiff's removal, and there is some evidence to suggest that Supervisor Brown may have been a decisionmaker with respect to plaintiff's emergency placement, as well.  (*See* Doc. 119-1 at PAGEID 3228, 3243).  Plaintiff testified that Supervisor Brown heard plaintiff say she planned to file an EEO October 29, 2021.  (*See* Doc. 118-1 at PAGEID 2286; Doc. 118-10 at PAGEID 2693-94).  Plaintiff has therefore raised a genuine issue of material fact as to Supervisor Brown's knowledge of her prior protected activity.  Turning to causation, plaintiff's emergency placement occurred approximately two weeks after Supervisor Brown learned of the protected activity (the removal was approximately six weeks after).  In the Sixth Circuit, "temporal proximity alone can be enough" to raise an inference of causation.  *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).  *See also Mickey*, 516 F.3d at 524 n.3 (noting that previous cases finding temporal proximity alone sufficient to raise an inference of causation considered periods of six months or less between protected activities and material adverse actions).

Notwithstanding the foregoing, defendant points to the November 15, 2021 altercation between plaintiff and Supervisor Goddard and cites authority for the proposition that "an intervening cause between protected activity and an adverse employment action dispels any inference of causation."  *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 450 (6th Cir. 2020).  That conclusion, however, appears to flow from the fact that there was no indicia of causation *besides* temporal proximity in the record before the *Kenney* court.  *Id.* at 449.  This is consistent with other cases discussing the effect of an intervening cause.  *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) (finding that intervening legitimate causes dispelled causation inference where the plaintiff "failed to provide any evidence aside from temporal proximity that

23

links his protected activity to his termination."); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (holding that an inference of causation based on timing alone may be "extinguished" by an "intervening legitimate reason to discipline").[20] *See also Parks v. City of Chattanooga*, 74 F. App'x 432, 438 n.5 (6th Cir. 2003) (observing that an intervening sexual assault claim against the plaintiff "undercut" plaintiff's attempt to use temporal proximity as indicia of causation); *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 793 (N.D. Ohio 2024) (intervening causes dispelled inference of causation where "no evidence in the record" showed the plaintiff "would have suffered [ ] adverse action if the [protected activity] w[as] the *only* basis for discipline").

Here, in addition to temporal proximity, plaintiff points to a December 4, 2021 email from Supervisor Brown to Supervisor Goddard—written after the November 15, 2021 altercation and plaintiff's emergency placement but prior to her removal. In the email, Supervisor Brown states, "Jenn[,] I need the questions for Monday .. Her PDI [pre-disciplinary interview] is Monday at 4:00. . . . I am going to come in early to take care of this but I need to know what you want me to ask her. . . ." (Doc. 47 at PAGEID 409). At most, this email shows that Supervisors Goddard and Brown, both allegedly aware of plaintiff's prior protected activity, corresponded in connection with plaintiff's disciplinary process resulting from the intervening November 15, 2021 altercation. That their correspondence concerned the November 15, 2021 incident is made clear from the context of other emails proffered by plaintiff. (*See id.* at PAGEID 402-12). But plaintiff has not explained, and the Court is unable to discern, how this email raises a reasonable inference of a but-for causal connection between *her protected activity* (as opposed to the

---

[20] In *Wasek*, the Sixth Circuit recognized that an intervening event (in that case, walking off of a work site) resulting in adverse action, may *itself* be considered protected activity. It declined to consider the argument, however, where the plaintiff did not raise it. *Id.* at 471. Likewise here, plaintiff makes no argument that her confrontation with Supervisor Goddard was protected activity for purposes of her retaliation claim.

altercation) and the alleged adverse action. Without such evidence, plaintiff fails to raise a genuine issue of material fact on the causation element of her retaliation claim vis à vis Supervisor Brown.

Plaintiff has also failed to raise a genuine issue of material fact on all of the elements of her prima facie case of retaliation vis à vis Manager Hicks. There is some evidence that Manager Hicks was a concurring official in plaintiff's removal. (*See* Doc. 118-12 at PAGEID 2742). There is also some evidence that Manager Hicks was a decisionmaker with respect to plaintiff's emergency placement. *See supra* p. 9 n.9. With respect to knowledge, Manager Hicks' EEO affidavit acknowledges that plaintiff reported harassment to him on multiple occasions. (*See* Doc. 1 at PAGEID 49; Doc. 119-4 at PAGEID 3297). (*See also* Doc. 125 at PAGEID 3756-58 (plaintiff states in her verified filing that she reported harassment to Manager Hicks in October 2021)).

With respect to causation, there was a short period of time between when Mr. Hicks learned of plaintiff's protected activity and plaintiff's emergency placement and removal (up to approximately four or eight weeks, respectively). In addition to temporal proximity, plaintiff points to a January 11, 2022 email (after both plaintiff's emergency placement and removal) from Manager Hicks to another USPS employee. (*See* Doc. 47 at PAGEID 413). Manager Hicks is replying to an email addressed to Supervisor Goddard, on which he is copied, appearing to deal with plaintiff's pay adjustment following her reinstatement. (*Id.*). Manager Hicks tells the sender that he has submitted plaintiff's pay adjustment, asks the sender to "keep [Supervisor Goddard] out of this[,]" and tells the sender he "will handle anything that has to do with [plaintiff] personally. . . ." (*Id.*). Plaintiff does not explain, and the Court is unable to discern, how this email, which postdates both alleged materially adverse actions, raises a reasonable

inference that plaintiff's protected activity was the but-for cause of her emergency placement or removal.  Plaintiff has therefore failed to raise a genuine issue of material fact on the prima facie elements of her retaliation claim vis à vis Manager Hicks.

With respect to Mr. White, his EEO affidavit states that he was not aware of any prior EEO activity by plaintiff.  (*See* Doc. 119-5 at PAGEID 3304).  Plaintiff has proffered no other evidence that he had prior knowledge of plaintiff's protected activity.  Therefore, plaintiff fails to raise a genuine issue of material fact as to Mr. White's knowledge of her prior protected activity, and a retaliation claim premised on him as the decisionmaker fails.

Even assuming, arguendo, that the evidence discussed above was sufficient to raise a genuine issue of fact on her prima facia case of retaliation, plaintiff fails to raise a triable issue of fact on the balance of the *McDonnell-Douglas/Burdine* analysis as to Supervisor Brown and Manager Hicks.

Plaintiff does not appear to dispute that defendant has a legitimate business interest in enforcing its zero-tolerance policy regarding workplace violence.  Rather, plaintiff argues that the proffered reason is pretext.  To show pretext, plaintiff must demonstrate that the proffered reason either "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Plaintiff cannot rely on the first method.  In her deposition, plaintiff testified that she "might have brushed [Supervisor Goddard's] shoulder" (Doc. 118-1 at PAGEID 2337, Pl.'s Dep. 141:17-18; *see also id.* at PAGEID 2339, 143:11 (plaintiff testifies that she "could have brushed" Supervisor Goddard)).  Otherwise, plaintiff points to the December 15, 2021 statement by

Ferdinand Manzon stating he did not witness physical contact between plaintiff and Supervisor Goddard. (Doc. 118-10 at PAGEID 2614). Plaintiff also points to the January 27, 2022 statement by Carla B., which is more consistent with her own narrative. (*Id.* at PAGEID 2622). Mr. Manzon and Carla B.'s statements, however, are not sworn to or submitted under penalty of perjury. In addition, they are also both hearsay or hearsay within hearsay, which the Court may not consider on a motion for summary judgment.[21] *See Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cnty. Fiscal Ct.*, 734 F. App'x 322, 327 (6th Cir. 2018) (quoting *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) ("[H]earsay evidence generally cannot be considered on a motion for summary judgment."). Finally, even if the Court were to consider Carla B.'s statement, it reports that Ms. Robinson saw plaintiff "tap[ ]" Supervisor Goddard "on the shoulder" (i.e., saw contact between the two women). (Doc. 118-10 at PAGEID 2621).

Given the foregoing, no reasonable juror could conclude that defendant's legitimate business reason had no basis in fact. At most, in her unsworn/unverified reply in support of her motion for summary judgment, plaintiff states that she "never admitted" physical contact with Ms. Goddard (Doc. 132 at PAGEID 3862). Neither, however, does she deny it. The first method of demonstrating pretext does not apply here.

The third method of showing pretext generally "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its

---

[21] Mr. Manzon and Carla B.'s statements are distinguishable from other out-of-court statements discussed in this Order, which may be considered pursuant to Fed. R. Civ. P. 56(c)(1)(A). *See also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.").

discharge of the plaintiff." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). As discussed above, Barry Goddard—the only potentially relevant individual plaintiff has identified—is an inapt comparator. *Goldblum v. Univ. of Cincinnati*, No. 1:19-cv-398, 2020 WL 4346548, at *3 (S.D. Ohio July 29, 2020) (quoting *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020)) (At the pretext stage, "substantially identical conduct" is required). Thus, this method of showing pretext is also unavailable to plaintiff.

Finally, for the second method of showing pretext, the plaintiff admits that conduct could motivate dismissal but argues "that an illegal motivation was *more* likely than that offered by the defendant." *Manzer*, 29 F.3d at 1084. In other words, "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

The circumstantial evidence plaintiff relies on, however, does not create an issue of fact that defendant's proffered reason for disciplining plaintiff was a pretext for retaliation. First, after her emergency placement but prior to her removal, Supervisor Brown emailed Supervisor Goddard to ask "what [Supervisor Goddard] want[ed] [her] to ask [plaintiff]" in plaintiff's pre-disciplinary interview. (Doc. 47 at PAGEID 409). The Court does not find that this email tends to show that an illegal motivation was more likely than defendant's legitimate business reason to have caused plaintiff's emergency placement or removal. The email does not, for instance, ask Supervisor Goddard what information to put in a report or what to communicate to a manager. Plaintiff does not proffer Supervisor Goddard's response, leaving any inference of pretext wholly speculative.

Second, the email from Manager Hicks saying to "keep [Supervisor Goddard] out of this" and telling the sender he would "handle anything that has to do with [plaintiff] personally" does

28

not raise an issue of fact on defendant's motivation. (*See* Doc. 47 at PAGEID 413). Manager Hicks sent the email after both materially adverse actions had already occurred. In addition, nothing in the language of the email suggests any connection between plaintiff's protected activity and her subsequent removal; indeed, the natural and reasonable reading of the email is that Manager Hicks wished to limit any further interaction and possible confrontation between Supervisor Goddard and plaintiff by handling matters himself. The email does not give rise to an inference that Hicks was motivated by retaliatory animus to discipline plaintiff.

Third, plaintiff points to Carla B.'s statement as evidence that Supervisor Goddard influenced Ms. Robinson to fabricate portions of her statement to support Supervisor Goddard's narrative in exchange for a promotion. (Doc. 118-10 at PAGEID 2620-22; Doc. 89-1 at PAGEID 1269 (internal USPS promotion document)). However suggestive of improper motive this statement may be, it is unsworn/unverified inadmissible hearsay or hearsay within hearsay that cannot be considered on a motion for summary judgment. *See Bluegrass Dutch Tr. Morehead, LLC*, 734 F. App'x at 327.

Plaintiff fails to raise a genuine issue of material fact as to whether defendant's legitimate business reason for plaintiff's emergency placement and removal were a pretext for unlawful retaliation. As such, her retaliation claims premised on Supervisor Brown and Manager Hicks as the decisionmakers are denied.

This result is unchanged when analyzed using a "cat's paw" theory of liability, which plaintiff raises in her own motion for summary judgment (Doc. 121-1 at PAGEID 3402) and alludes to again in her response to defendant's motion for summary judgment (Doc. 125 at PAGEID 3779). Under that theory, "a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory

29

employment action." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006)).

For the cat's paw theory to succeed, however, plaintiff must present evidence that Supervisor Goddard harbored bias or animus against plaintiff based on her protected activity. *Boughton v. Garland*, No. 19-cv-154, 2022 WL 912210, at *13 (S.D. Ohio March 29, 2022) (citing *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017); *Voltz v. Erie Cnty.*, 617 F. App'x 417, 424-25 (6th Cir. 2015)). Such a showing is "difficult" and requires evidence of "prejudice, spite, or ill will." *Id.* (quoting *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 626 (6th Cir. 2010), and *Volz*, 617 F. App'x at 424-25).

Here again, plaintiff refers to the post-emergency placement/pre-removal email from Supervisor Brown to Supervisor Goddard, in which the former asks the latter what questions to ask plaintiff in a pre-disciplinary interview regarding the November 15, 2021 altercation. (*See* Doc. 47 at PAGEID 409). This email, however, says nothing about plaintiff's prior protected activity at all. Further, as Supervisor Goddard is not the author, it is difficult to imagine how it could shed any light at all on Supervisor Goddard's bias or animus against plaintiff based on any reason. Plaintiff otherwise relies on Carla B.'s statement, which is not competent summary judgment evidence. Even if it were, the statement does not disclaim physical contact by plaintiff against Supervisor Goddard. (Doc. 118-10 at PAGEID 2621 (Carla B. states that Ms. Robinson stated that "[plaintiff] . . . tapped [Supervisor Goddard] on the shoulder")).[22]

---

[22] To use the "cat's paw" theory of liability in the retaliation context, the retaliatory actions must be the but-for cause of the adverse employment action. *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir. 2014). Applied here, plaintiff must show that but for Supervisor Goddard's alleged biased interference with Ms. Robinson's statement, the emergency placement and removal would not have occurred. But Carla B.'s statement seems to show that Allana Robinson would have reported physical contact regardless of interference—just contact of a different degree. As such, Carla B's statement, even if admissible, does not demonstrate that Supervisor Goddard's alleged biased interference was the but-for cause of plaintiff's emergency placement and removal.

Plaintiff cannot rest solely on her belief that Supervisor Goddard was biased against her to proceed under the cat's paw theory of liability. *See Kyle-Eiland*, 408 F. App'x at 943 ("[T]he [summary judgment] standard . . . does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court, even when such assertions are completely unsupported by the record."). Thus, plaintiff has not raised genuine issues of material fact related to the cat's paw theory of liability.

3. <u>Harassment</u>

Title VII protects employees from discriminatory hostile or abusive work environments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). A hostile work environment claim requires plaintiff to show that: "(1) she was a member of the protected class; (2) she was subjected to unwelcome harassment, based on [a protected characteristic]; (3) the harassment had the effect of unreasonably interfering with her work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 878 (6th Cir. 2013) (citing *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)).

For purposes of the third factor, the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)). In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "[C]omments and harassing acts of a 'continual nature' are more likely to be deemed pervasive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). Furthermore, "courts must determine whether the 'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Grace*, 521 F.3d at 678-79 (quoting *Harris*, 510 U.S. at 21 (internal quotation marks omitted)).

Defendant argues that plaintiff has not marshalled sufficient evidence to meet the "relatively high bar" required to succeed on a Title VII claim using a hostile work environment theory. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017)). In addition to the evidence at bar failing to show ongoing, severe conduct, defendant also argues that the evidence fails to tie the alleged harassment to protected characteristics.

In plaintiff's verified response, she states that defendant was selectively enforcing its policies and rules related to numbers of breaks, break times, lunch times, cell phone usage, and behavior against plaintiff and not against other employees and that this was "because of her protected characteristic." (Doc. 125 at PAGEID 3785). In both this filing and her own motion for summary judgment, plaintiff highlights a number of what appear to be written statements by other USPS employees and excerpts from EEO iComplaints by other USPS employees related to harassment to support her own claim. (*Id.* at PAGEID 3774 (referring to Doc. 89-1 and 89-3 at

PAGEID 1203, 1221, 1231, 1239, 1243,[23] 1273, 1275, 1283, 1350-53); Doc. 121-1 at PAGEID 3409, 3413 (referring to Doc. 89-1 to 89-3 at PAGEID 1231, 1243, 1245, 1273, 1352-53)).

Defendant argues that the latter evidence is unauthenticated hearsay or hearsay within hearsay.  And even if it were not, defendant argues it does not create a genuine issue of material fact on plaintiff's hostile work environment claim.  As noted above, a hostile work environment claim requires evidence that the harassment was linked to a protected characteristic.  By contrast, the documents cited by plaintiff, with three exceptions (Doc. 89-1 at PAGEID 1231 (race), PAGEID 1242 (PAGEID 1283 (sexual orientation)) speak generally about unequal, arbitrary treatment without reference to the protected characteristics at issue in this case.

Plaintiff's has failed to present evidence creating a genuine issue of fact on whether the conduct alleged created an objectively hostile work environment.  What plaintiff describes are ordinary workplace tribulations; nothing physically threatening, humiliating, or extremely serious such that it would be actionable.  Allowing plaintiff's account as true, the alleged harassment simply does not rise to the level necessary to sustain a Title VII harassment claim.

## VI.    Conclusion

For the foregoing reasons:

1.  Defendant's motion to strike (Doc. 127) is **DENIED**.

2.  Defendant's motion for summary judgment (Doc. 120) is **GRANTED**, and plaintiff's motion for summary judgment (Doc. 121) is **DENIED**.

3.  The Court **DIRECTS** the Clerk to enter judgment for defendant and to

---

[23] Plaintiff actually references PAGEID 1242, but that page contains no substantive information.  The Court believes plaintiff meant to refer to PAGEID 1243 because this page reflects an EEO iComplaint.

**TERMINATE** this case on its docket.

**IT IS SO ORDERED.**

Date: _7/21/2025_

Karen L. Litkovitz
United States Magistrate Judge